UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| S.D. BENNER, LLC and ) | |
| S.D. BENNER III, LLC, ) | |
| Plaintiffs, ) | |
| ) | No. 1:15-cv673 |
| -v- ) | |
| ) | Honorable Paul L. Maloney |
| BRADLEY COMPANY, LLC, ) | |
| JOHN MUNDELL, and BRADLEY TOOTHAKER, ) | |
| Defendants. ) | |
| ) | |

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Pending before this Court are two motions to dismiss. The first motion was filed by Defendant John Mundell. (ECF No. 13 Motion and ECF No. 14 Brief.) The second motion was filed jointly by Defendants Bradley Toothaker and Bradley Company. (ECF No. 15 Motion and ECF No. 16 Brief.) All three defendants challenge the sufficiency of the pleadings in the amended complaint to allege a claim under Racketeer Influenced and Corrupt Organizations Act (RICO). Plaintiffs S.D. Benner and S.D. Benner III (the Benner Companies) filed responses (ECF Nos. 16 and 18) and Defendants filed replies (ECF Nos. 20 and 21). The Court agrees with Defendants that the amended complaint fails to allege facts with sufficient facts to sustain the RICO claims and will grant the motions.

I.

Under the notice pleading requirements, a complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); see *Thompson v. Bank of America, N.A.*, 773 F.3d 741, 750 (6th Cir. 2014) (holding that

to survive a Rule 12(b)(6) motion, the complaint "must comply with the pleading requirements of Rule 8(a).")." The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Although the court considers the well-pled factual allegations in the complaint, a motion to dismiss turns exclusively on questions of law. *See Thomas v. Arn*, 474 U.S. 140, 150 n.8 (1985); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 674-75 (2009) ("Evaluating the sufficiency of the complaint is not a 'fact-based' question of law, . . . .").

To survive a motion to dismiss, "[t]he complaint must 'contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (citation omitted). The plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level. *Bell Atl.*, 550 U.S. at 555. And the claim for relief must be plausible on its face. *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citations

omitted). When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform,* 648 F.3d at 369. Naked assertions without further factual enhancement, formulaic recitations of the elements of a cause of action, and mere labels and conclusions will be insufficient for a pleading to state a plausible claim. *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) (citations omitted).

## II.

The amended complaint is the controlling pleading. (ECF No. 6 Complaint.) For these motions, the Court must accept the well-pleaded facts in the Complaint as true.

The Benner Companies filed for Chapter 11 bankruptcy in 2011. (Compl. ¶ 9.) At the time, the Benner Companies owned twenty-two properties in this judicial district. (*Id.* ¶ 8.) Comerica Bank was the Benner Companies' largest creditor. (*Id.* ¶ 10.) At Comerica's request, the Benner Companies used the services of Defendant John Mundell, then a real estate broker with Signature Associates. (*Id.* ¶ 10.) In March 2012, Mundell completed an Opinion of Values for the properties. (*Id.* ¶ 11.) A reorganization plan was approved in January 2013. (*Id.* ¶ 13.) In April 2013, following Comerica's suggestion, the Benner Companies concluded one-year listing agreements with Signature Associates, naming Mundell as the broker. (*Id.* ¶ 15.)

On April 1 and June 1, 2014, the Benner Companies entered into twenty-two broker agreements with Defendant Bradley Company. (Compl. ¶18.) Mundell had joined Bradley Company in March 2014 (*id.* ¶ 16), and each agreement provided that Mundell would act

as the broker for the property for any sale or lease (*Id.* ¶ 18.) The agreements expired on December 31, 2014. (*Id.* ¶ 21.)

On April 27, 2014, the Benner Companies completed a settlement agreement with Comerica, which required the Benner Companies to execute quitclaim deeds for the properties. (Compl. ¶ 22.) The quitclaim deeds were signed, but the name of the grantee was left blank. (*Id.* ¶ 25.) Under the settlement agreement, Comerica would return the properties to the Benner Companies on the condition that the Benner Companies paid Comerica $18.75 million by August 8, 2014. (*Id.* ¶ 23.) If the payment was not made by August 8, Comerica would own the properties and the amount owed by the Benner Companies to Comerica would be reduced by the same amount. (*Id.* ¶ 24.) Comerica later extended the deadline for the payment to September 8, 2014. (*Id.* ¶ 32.) The Benner Companies did not make the required payment by the extended deadline date. (*Id.* ¶ 35.)

After the settlement agreement was executed, Mundell introduced the Benner Companies to Great Lakes Capital and to Bradley Capital Markets, purportedly to assist the Benner Companies secure financing in order make the payment to Comerica. (Compl. ¶ 26.) Defendant Bradley Toothaker is a principal with both Great Lakes Capital and Bradley Capital Markets. (*Id.* ¶ 27.) On July 16, 2014, Defendant Bradley Company executed a confidentiality agreement with Great Lakes Capital, which identified Bradley Company as the broker and identified Great Lakes Capital as the potential purchaser of the properties that were the subject of the settlement agreement between Comerica and the Benner Companies. (*Id.* ¶ 28.) On July 24, 2014, Mundell requested and obtained confidential information about the properties from the Benner Companies. (*Id.* ¶ 30.) The same day,

Mundell asked the Benner Companies to sign off on the confidentiality agreement that had been executed by Great Lakes Capital and Bradley Capital Markets.  (*Id.* ¶ 31.)  The Benner Companies did not agree because of the apparent conflict of interest.  (*Id.*)

On December 20, 2014, Grand River Retail, LLC was organized.[1]  (Compl. ¶ 36.)  And three days later, on December 23, GRR Capital Funding was formed.  (*Id.* ¶ 38.)  Toothaker is a principal of Grand River Retail and GRR Capital Funding.  (*Id.* ¶¶ 37 and 39.)  On December 26, 2014, GRR Capital Funding purchased the note for the Benner Properties from Comerica.  (*Id.* ¶ 40.)  On January 8, 2015, the quitclaim deeds to the Benner Properties were recorded with the Register of Deeds of Kent County, with the grantee identified as Grand River Retail.  (*Id.* ¶ 41.)

At this point, the Court must note that Plaintiffs have not explained with sufficient detail how the scheme to defraud occurred.  Plaintiffs have alleged a number of facts which are consistent with a scheme to defraud.  But, in neither the complaint nor in their responses, have Plaintiffs summarized how the scheme was to be accomplished.  Based on the pleading, the Court infers the following scheme.  Defendants conspired to acquire the Benner Properties at an amount less than the fair market price.  Defendants accomplished this by acting as the broker for the properties and intentionally failing to find buyers or lessees for the properties.  Because there were no offers, under the settlement agreement Plaintiffs were forced to accept $18.75 million from Comerica for the properties.  Once the properties were

---

[1] In paragraph 32, Plaintiffs identify September 8, 2014, as the "Extended Settlement Date." Curiously, for all of the events in December 2014, Plaintiffs allege that they occurred in advance of the "Extended Settlement Date" (Compl. ¶ 33) or in advance of the "Expiration Date" (*id.* ¶¶ 36, 38 and 40).

5

assigned to Comerica, Defendants purchased the properties from Comerica for less than they would have been able to purchase the properties from Plaintiffs.[2]

### III.

The first claim or count in the Complaint is Plaintiff's RICO claim, which is brought against Mundell and Toothaker (Compl. ¶ 44), but not against Bradley Company.[3] Plaintiffs plead that the Bradley Company is an on-going enterprise whose activities affect interstate commerce. (*Id.* ¶ 45.) Both Mundell and Toothaker are either employed or are associated with the enterprise. (*Id.*) Plaintiffs assert that Mundell and Toothaker intentionally defrauded them. (*Id.* ¶ 46.) The plan was to fraudulently acquire the Benner Properties while acting as the real estate broker for the Benner Companies. (*Id.*) According to Plaintiffs, these acts constitute a pattern of racketeering activity. (*Id.* ¶ 48.) Plaintiffs plead that Mundell and Toothaker used interstate communications over the internet to further their scheme, specifically entering into broker agreements with the Benner Companies. (*Id.* ¶ 47.)

A well-pleaded claim for a violation of RICO, 18 U.S.C. § 1962, includes sufficient facts to establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The fourth element, racketeering activity, must include predicate act, conduct that is indictable under one of the

---

[2] Should Plaintiffs believe that they pleaded some other scheme to defraud, Plaintiffs will have to convince the Court that their theory was developed and advanced in the pleadings.
[3] The Complaint includes seven additional claims, all brought under state law. The state law claims are brought against the Bradley Company only, and not against either Mundell or Toothaker.

federal statutes listed in 18 U.S.C. § 1961(1)(B). *Id.*; *Advocacy Org. for Patients and Providers v. Auto. Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). Here, Plaintiffs rely on 18 U.S.C. § 1343 (Compl. ¶ 47), the statute that criminalizes fraud by wire, radio or television.

A.

Defendants, in both motions, argue that Plaintiffs failed to plead the racketeering element with sufficient particularity. Specifically, Defendants argue that Plaintiffs have not included sufficient facts to plead a claim for wire fraud. (ECF No. 14 at 6-8 PageID.68-70; ECF No. 16 at 12-13 PageID.94-95.)

The Federal Rules of Civil Procedure requires fraud claims to be plead with particularity. Fed. R. Civ. P. 9(b). The Sixth Circuit requires a plaintiff making a fraud claim to allege, "at a minimum," "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Advocacy Organization*, 176 F.3d at 322 (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)); *see Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (holding that "for any fraud claim," "[a]t a minimum, Plaintiff must allege the time, place, and contents of the misrepresentations"); *Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir. 1992) (holding that, to satisfy Rule 9, "the plaintiff must allege specifically times, places, contents and victims of the underlying fraud"); *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984) (holding that Rule 9 requires the plaintiff to "at minimum allege the time, place and contents of the misrepresentations"). A claim for wire fraud requires a plaintiff to prove (1) a scheme to defraud and (2) the use of interstate

electronic communication in furtherance of the scheme. *Id.* Furthermore, for any intentional fraud claim, the plaintiff must show, with particularity, a misrepresentation made by the defendant. *Id.* (quoting *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 389 (6th Cir. 1996)).

In their responses, Plaintiffs identify two alleged misrepresentations. Plaintiffs first state that Bradley Company made false promises to use its best efforts to find purchasers and lessees for the Benner Properties. Both Toothaker and Mundell were part of the Bradley Company. Second, Plaintiffs argue that Mundell perpetuated a fraud when he introduced Great Lakes Capital to the Benner Companies. Plaintiffs argue the purpose of the introduction was not to assist the Benner Companies to secure financing, but to gather confidential information from the Benner Companies so that Defendants could purchase the properties for themselves. For the wire fraud statute, a false promise and the concealment of a material fact can be used to prove a scheme to defraud. *See United States v. Weimert*, 819 F.3d 351, 355 (6th Cir. 2016).

The Court agrees with Defendants that the complaint does not plead a claim for wire fraud with sufficient specificity. At no point in the complaint do Plaintiffs *plead* that Bradley Company, and the individual defendants by their association, made a false promise to use best efforts to sell or lease the Benner Properties. Plaintiffs do plead that the broker agreements imposed a best efforts duty on the Bradley Company. (Compl. ¶ 20.) And, Plaintiffs do plead that Mundell only brought a single prospective purchaser, who made a very low offer for a single property. (*Id.* ¶ 33.) Finally, Plaintiffs plead that their properties were not listed on any well-used real estate website. (*Id.* ¶ 34.) These allegations are

insufficient to plead a false promise made by Mundell or Toothaker. The allegations do allow the inference that the Bradley Company and Mundell are bad real estate brokers. But, alleging facts to support the conclusion that a party is a bad broker does not, by itself, plead a claim for fraud.

Any inference of a false promise made in the broker agreements is undermined by the sequence of events outlined in the complaint. At least some of the broker agreements were executed *before* Comerica and the Benner Companies concluded their settlement agreement. (Compl. ¶¶ 18 and 22.) And, without the settlement agreement in place, the allegedly fraudulent scheme would not work because Defendants would have to make the offer to purchase the properties to the Benner Companies, rather than to Comerica.[4] For the broker agreements made before the settlement agreement, there is no basis for the Court to infer that any promise to use best efforts was false when the broker agreement was signed. The allegations do not identify when each of the twenty-two agreements were signed.

The Court also concludes that the complaint fails to plead a misrepresentation by Mundell or Toothaker relating to the information sought and obtained concerning the Benner Properties. Initially, the complaint does not identify with any specificity what the alleged misrepresentation was. The Court infers that the misrepresentation was the *purpose* for which Mundell sought and obtained information about the Benner Properties. (Compl.

---

[4] Although it may be possible for Plaintiffs to explain how the scheme to defraud could be accomplished without the settlement agreement, the Court makes this conclusion based on the manner in which the facts are pled in complaint. As the facts are alleged in the complaint, prior to the settlement agreement, Plaintiffs had no incentive to sell their property for less than a fair market price. After the settlement agreement was in place, Plaintiffs had incentive to accept offers for the land for less than the fair market price, but no less than $18.75 million.

¶ 30.)  The complaint does not identify what information was sought and obtained.  Neither does the complaint indicate how that information could have been used as part of a fraudulent scheme.  Additionally, the complaint does not allege that the request for information or the response involved the use of interstate wires.  Reinforcing the conclusion that no material misrepresentation was made, Mundell did not hide from Plaintiffs the broker relationship between Bradley Company and Great Lakes Capital.  The complaint pleads that Mundell disclosed to Plaintiffs the confidentiality agreement between the Bradley Company and Great Lakes Capital.  (Compl. ¶ 31.)

B.

Defendants also argue that the complaint fails to allege sufficient facts to establish a pattern of racketeering activity.  (ECF No. 14 at 8-12 PageID.70-74; ECF No. 16 at 9-11 PageID.91-93.)

In *H.J. Incorporated v. Northwestern Bell Telephone Company*, 492 U.S. 229 (1989), the United States Supreme Court provided some guidance for the pattern element of a RICO claim.  The RICO statute "requires at least two acts of racketeering within a 10-year period" for a pattern to exist.  *Id.* at 232 (quoting 18 U.S.C. § 1961(5)).  To prove a pattern, the plaintiff must show that the two or more acts are both "related *and* that they amount to or pose a threat of continued criminal activity."  *Id.* at 239 (italics in original).  "'Continuity and relationship constitute two analytically distinct prongs of the pattern requirement.'"  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006) (quoting *Vild*, 956 F.2d at 566).  Defendants argue the complaint fails to establish the continuity requirement for a pattern.

For the continuity requirement, a RICO plaintiff must demonstrate either "a closed-ended conspiracy of sufficient duration or an open-ended conspiracy that could have continued into the future." *Thompson v. Paasche*, 950 F.2d 306, 311 (6th Cir. 1991); *see H.J. Inc.*, 492 U.S. 241-42. Closed-period RICO violations generally must show repeated conduct over a "substantial period of time." *H.J. Inc.*, 492 U.S at 242. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.*; *see e.g., Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 805 (6th Cir. 2015) (racketeering activity over eight-month period was insufficient to show a closed-ended conspiracy); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) (racketeering activity over 17-month period was insufficient to establish a closed-ended conspiracy); *Vild*, 956 F.2d 569 (racketeering activity over a seven-month period was insufficient to establish a closed-ended conspiracy); *American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 354-55 (6th Cir. 1990) (racketeering activity over a six-month period was insufficient to establish the continuity requirement for a pattern of RICO violations).

Plaintiffs have not pleaded sufficient facts to show a closed-ended period of racketeering activity. Plaintiffs insist that the Sixth Circuit has not established a bright-line test, a specific number of months, over which the conduct must occur. Plaintiffs have accurately stated the law, but have not undermined the weight of Defendants' argument. Without establishing a bright-line test, courts have consistently rejected RICO claims based on closed-ended periods whose duration was less than two years. *See GICC Capital Corp. v Tech. Fin. Group, Inc.*, 67 F.3d 463, 467-68 (2d Cir. 1995) (collecting circuit court opinions). Plaintiffs also argue that the predicate acts spanned more than two years, starting

11

in March 2012 when Mundell provided his Opinion of Values. (ECF No. 18 at 5 PageID.120; ECF No. 19 at 5 PageID.128.) Plaintiffs reasoning stretches the pattern requirement too far. Not each and every interaction with a purported member of an alleged RICO conspiracy constitutes a predicate act. As pled, Mundell's Opinion of Values was not part of the conspiracy. Plaintiffs have not alleged that the Opinion of Values undervalued their property or constituted a misrepresentation. And, if the Opinion of Values fairly assessed the worth of the property, the Court cannot infer that the Opinion of Values was any part of the scheme to defraud. Even if the Opinion of Values did unfairly estimate the value of the Benner Properties, as mentioned above, without the settlement agreement, the alleged scheme to defraud could not have succeeded. And, the Opinion of Values was issued more than two years before Plaintiffs entered into the settlement agreement with Comerica. The Court cannot infer that Mundell could have anticipated the creation of the settlement agreement such that he was already scheming to defraud the Plaintiffs two years before the agreement was executed. Also, the Opinion of Values was issued more than one year before Plaintiffs enter into the first broker agreement with Mundell, while he still worked for Signature Associates.

Continuity based on open-ended conduct will depend whether the predicate acts "establish a threat of continued racketeering activity[.]" *H.J. Inc.*, 492 U.S. at 424. Generally, for an open-ended scheme, a plaintiff will need to establish "'a distinct threat of long-term racketeering activity,' or by showing 'that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" *Moon*, 465 F.3d at 727 (quoting *H.J. Inc.*, 492 U.S. at 424). Where the threat of racketeering activity is not indefinite, or the threat of

12

racketeering activity is not a normal method by which the defendants do business, a plaintiff cannot establish open-ended continuity. *See Vild*, 956 F.2d at 569.

Plaintiffs have not pleaded sufficient facts to allege open-ended continuity for the purpose of showing a pattern of RICO activity.[5] Plaintiffs have not pleaded that Defendants falsely promise to use best practices to sell or lease real estate as a regular course of business. Plaintiffs have not pleaded that Defendants regularly use broker agreements to collect otherwise unavailable information about property for improper purposes. Plaintiffs cannot establish an open-ended pattern of an indefinite period because, after they transferred all of their property to Comerica, the scheme was over. *See, e.g., Thompson*, 950 F.2d at 311 ("He had nineteen lots to sell. Once he sold all the lots, the scheme was over. It had to be, he had no more land to sell. Thus, his scheme was, by its very nature, insufficiently protracted to qualify as a RICO violation.").

Having found that Plaintiffs did not adequately plead a predicate act or a pattern of RICO violations, the Court need not consider or resolve the other problems with the complaint identified by Defendants.

IV.

Toothaker and Bradley Company urge this Court to dismiss the seven pendant state claims. Toothaker and Bradley Company argue that the Court has jurisdiction over the

---

[5] In their responses, Plaintiffs appear to rely exclusively on a closed-ended continuity. By failing to develop the argument, Plaintiffs have waived the possibility of showing continuity by open-ended activity. Nevertheless, the Court will address the issue.

lawsuit only because of the federal claim. Because the individual defendants and Plaintiffs are all from Michigan, there is no diversity jurisdiction.

The Court declines to dismiss the pendant state claims. Five of the seven state claims are for variations of a claim for breach of fiduciary duty. The statute of limitations for those claims is three years. *See Moross Ltd. P'ship v. Fleckensstein Capital, Inc.*, 466 F.3d 508, 518 (6th Cir. 2006) (citing *Miller v Magline, Inc.*, 526 N.W.2d 761, 774 (Mich. Ct. App. 1997)). Because the three-year limitations period expired while these motions were pending, the Court opts not to dismiss the state-laws claims. *See Sharp Elec. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514-15 (7th Cir. 2009) (noting that where the statute of limitations has run on pendant state law claims, courts should not dismiss the claims even if the federal claims have been resolved); *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) ("If the statute of limitations had run on Ladsco's state claims while the action in federal court was pending, previous decisions of this court strongly indicate that dismissal of the state claims would be an abuse of discretion.")

V.

The amended complaint fails to plead sufficient facts to establish a RICO violation. Because the predicate act for the RICO violation is a claim for wire fraud, the predicate act is subject to Rule 9's particularity requirement for fraud. The complaint fails to plead the alleged misrepresentations with sufficient detail. In addition, the complaint does not allege sufficient facts to establish the continuity requirement to show a pattern of RICO violations. The predicates acts are too close in time to constitute a closed-ended conspiracy. And, the complaint does not attempt to establish an open-ended conspiracy.

## ORDER

For the reasons provided in the accompanying Opinion, the Court **GRANTS** the motions to dismiss filed by Defendant Mundell (ECF No. 13) and by Defendants Toothaker and Bradley Company (ECF No. 15.)  Plaintiffs' RICO claim is **DISMISSED.**  Because the remaining claims do not name either Mundell or Toothaker as defendants, Mundell and Toothaker are **DISMISSED.**  The Court will retain jurisdiction over the pending state law claims against Bradley Corporation.

**IT IS SO ORDERED.**

Date:  March 30, 2017                                                          /s/ Paul L. Maloney
                                                                              Paul L. Maloney
                                                                              United States District Judge